**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**KEITH WATERS,**

                           **Plaintiff,**

    **vs.**                                    **9:18-CV-196**
                                                **(MAD/ML)**

**CATHERINE JACOBSEN, et al.,**

                           **Defendant.**

_____

**APPEARANCES:**                         **OF COUNSEL:**

**KEITH WATERS**
1462 Dean Street
Brooklyn, New York 11213
Plaintiff _pro se_

**OFFICE OF THE NEW YORK**          **JOHN F. MOORE, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On February 15, 2018, Plaintiff _pro se_ Keith Waters ("Plaintiff"), who was at all relevant

times in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS"), commenced this civil rights action asserting claims arising out of his

confinement at Wallkill Correctional Facility ("Wallkill C.F."). _See_ Dkt. No. 1. On March 20,

2018, the Court reviewed the sufficiency of the Complaint, dismissed certain claims without

prejudice, and afforded Plaintiff the opportunity to submit an amended pleading. _See_ Dkt. No. 7.

On April 5, 2018, Plaintiff filed an Amended Complaint. _See_ Dkt. No. 9. On April 23, 2018, the

Court reviewed the sufficiency of the Amended Complaint, directing Defendants to respond to multiple claims. *See* Dkt. No. 11. On August 8, 2018, the Court granted in part Plaintiff's motion to amend his complaint. *See* Dkt. No. 31 at 21. On August 9, 2018, Plaintiff filed a Second Amended Complaint, which is the operative pleading. *See* Dkt. No. 32.

Presently before the Court is Defendants' unopposed motion for summary judgment of Plaintiff's Second Amended Complaint pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. *See* Dkt. No. 80.[1] In a Report-Recommendation and Order dated February 13, 2020, Magistrate Judge Miroslav Lovric recommended that the Court deny in part and grant in part Defendants' motion. *See* Dkt. No. 85. On March 2, 2020, Defendants filed objections to Magistrate Judge Lovric's Report-Recommendation and Order. *See* Dkt. No. 88.

## II. BACKGROUND

Since neither party objected to Magistrate Judge Lovric's recitation of the relevant background facts, and because it is consistent with the record, the Court adopts the factual background set forth in Magistrate Judge Lovric's Report-Recommendation and Order. *See* Dkt. No. 85 at 4–13.[2]

---

[1] Plaintiff requested an extension for his time to respond to Defendants' motion, as well as permission to exceed the twenty-five page limit for his memorandum of law. *See* Dkt. No. 83. The Court granted Plaintiff's request, allowing him to file a thirty-five page memorandum of law, and moving his date to respond to October 31, 2019. *See* Dkt. No. 84. Plaintiff did not file a response to Defendants' motion.

[2] Citations to page numbers refer to the pagination generated by CM/ECF, not the page numbers generated by the parties.

# III. DISCUSSION

## A.    Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried."  *Id.* at 36–37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of New York.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."  *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted).  "However, '[t]he mere existence of a

scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (emphasis and alterations in original)). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' . . . and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has directed that the court is obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment." *Id.* (citing *Showers v. Eastmond*, No. 00 CIV. 3725, 2001 WL 527484, *2 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When a party files specific objections to a magistrate judge's report-recommendation and order, the district court "make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, "[g]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." *O'Diah v.*

4

*Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## B. Exhaustion

The PLRA states that "[no] action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust all available administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016). The failure to exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *See Jones*, 549 U.S. at 218–19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules,

including deadlines, as a prerequisite to bringing suit in federal court. *See Woodford*, 548 U.S. at 90–103.

New York State has a three-step administrative review process (also known as the Inmate Grievance Program ("IGP")). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC") which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id.* § 701.5(c). Third, an adverse decision by the Superintendent may be appealed to the CORC. *See id.* § 701.5(d). If all three levels of review are exhausted, then the prisoner may seek relief in a federal court pursuant to section 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524).

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by the CORC, must be completed before an action asserting that claim may be filed in federal court. *See, e.g.*, *Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122–23 (2d Cir. 2001), *overruled on other grounds by Porter*, 534 U.S. 516) (emphasis in original); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8 (N.D.N.Y. Dec. 5, 2012). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, *11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

Although administrative remedies generally must be exhausted, a prisoner need not exhaust remedies if they are not "available." *Ross*, 136 S. Ct. at 1855. "First, an administrative remedy may be unavailable when 'it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates.'" *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1859). "Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.'" *Id.* (quoting *Ross*, 136 S. Ct. at 1859). "In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.'" *Id.* at 123–24 (quoting *Ross*, 136 S. Ct. at 1859). "Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* at 124 (quoting *Ross*, 136 S. Ct. at 1860).

### 1. *Claims against Defendants Wlodkowski and Purdy*

Defendants argue that Plaintiff failed to exhaust his First Amendment retaliation claims against Defendants Wlodkowski and Purdy related to the February 2017 Inmate Misbehavior Report ("MBR") and subsequent disciplinary hearing because Plaintiff failed to appeal the disciplinary determination or complete the grievance process.[3] *See* Dkt. No. 80-14 at 12. Having carefully reviewed Magistrate Judge Lovric's Report-Recommendation and Order, the parties' submissions, and the applicable law, the Court finds that Magistrate Judge Lovric correctly determined that the Court should dismiss Plaintiff's First Amendment retaliation claims against Defendants Wlodkowski and Purdy. *See* Dkt. No. 85 at 19.

---

[3] On February 16, 2017, Defendant Wlodkowski issued a MBR charging Plaintiff with violating rules related to unauthorized exchange, legal assistance, and possessing contraband. *See* Dkt. No. 80-3 at 184. On February 28, 2017, Defendant Purdy presided over a Tier II disciplinary hearing related to the MBR, finding Plaintiff guilty of violating the rules related to contraband and legal assistance. *See* Dkt. No. 80-3 at 180–81.

DOCCS maintains a separate review process for inmate appeals of disciplinary hearings. *See Davis v. Barrett*, 576 F.3d 129, 132 (2d Cir. 2009). A disciplinary appeal is sufficient to exhaust a claim that an inmate was deprived of due process at a disciplinary hearing. *See Thomas v. Delaney*, No. 9:17-CV-1023, 2019 WL 4247807, *10 (N.D.N.Y. Aug. 13, 2019) (collecting cases). Courts in this Circuit have held that "[t]hough a disciplinary appeal is sufficient to exhaust a claim that Plaintiff was deprived of due process at a disciplinary hearing, 'allegations of staff misconduct related to the incidents giving rise to the discipline must be grieved.'" *Barker v. Smith*, No. 16-CV-76, 2017 WL 3701495, *3 (S.D.N.Y. Aug. 25, 2017 (quoting *Scott v. Gardner*, 287 F. Supp. 2d 477, 489 (S.D.N.Y. 2003)).

Magistrate Judge Lovric correctly determined that the appeal of a disciplinary hearing would not exhaust the claims brought against either Defendant Wlodkowski or Defendant Purdy; these claims required a separate grievance determination under the IGP as the claims are allegations of staff misconduct. Furthermore, while Plaintiff did file a grievance on March 7, 2017, asserting that Defendants Wlodkowski and Purdy used the disciplinary process to retaliate against him, delayed his legal mail, and restricted his access to the law library, *see* Dkt. No. 80-4 at 22–23, he did not appeal the IGRC's March 22, 2017 dismissal of the grievance after they determined that Plaintiff was seeking "a decision or an appeal of a decision otherwise attainable through the disciplinary process." Dkt. No. 80-4 at 37; Dkt. No. 80-5 at 149–50 (excerpt of direct examination of Plaintiff when he testified he did not appeal the IGRC's decision).

Moreover, Plaintiff does not allege that he failed to meet the exhaustion requirement due to administrative remedies being unavailable to him. As a frequent litigator and "no stranger to the IGP," he has not presented any claim that he construed the disciplinary appeal process as a

substitute for completing the grievance process. *See Dabney v. Pegano*, 604 Fed. Appx. 1, 5 (2d Cir. 2015).

Based upon the record before the Court, Defendants have met their burden of showing that Plaintiff failed to exhaust his administrative remedies with respect to his First Amendment retaliation claims against Defendants Wlodkowski and Purdy related to the February 2017 MBR and subsequent disciplinary hearing.

### 2. *Claim against Defendant Annucci*

Defendants argue that Plaintiff's Fourteenth Amendment due process claim against Defendant Annucci should be dismissed because Plaintiff did not fully exhaust his administrative remedies because he made "no mention of any acts by Defendant Annucci" in his grievances on the issue of the recommendation for Plaintiff's special condition while on parole. Dkt. No. 80-14 at 12. The Court finds that Magistrate Judge Lovric correctly determined that the Court should deny this portion of Defendants' motion. *See* Dkt. No. 85 at 24.

"Because New York's IGP does not articulate an identification requirement, it is plain that a New York state prisoner is not required to name responsible parties in a grievance in order to exhaust administration remedies." *Espinal v. Goord*, 558 F.3d 119, 125 (2d Cir. 2009). "The pro se prisoner cannot be expected to infer the existence of an identification requirement in the absence of a procedural rule stating that the grievance must include the names of the responsible parties." *Id.* at 127. To satisfy the exhaustion requirement, "inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004).

Both Plaintiff's April 24, 2018 grievance and his May 28, 2018 grievance relate to Plaintiff's special conditions of parole, namely, Plaintiff not being provided with Form 9601aCS

and that the special conditions were imposed for the purpose of harassment and retaliation. *See* Dkt. No. 80-4 at 51, 67. Both grievances were eventually appealed to the CORC. *See* Dkt. No. 80-4 at 55, 76. It is clear from the record that Defendants were provided with sufficient information, in both grievances, to allow them to take appropriate responsive measures by fully investigating and responding to Plaintiff's complaints. *See* Dkt. No. 85 at 22–24. As Defendants present no alternative argument in favor of awarding summary judgment to Defendant Annucci based upon exhaustion, the Court denies this portion of Defendants' motion.

## C.     First Amendment Freedom of Speech and Fourth Amendment Claims

Defendants move for summary judgment on Plaintiff's First Amendment and Fourth Amendment claims against Defendants Purdy and Jacobsen arguing that these Defendants had "reasonable cause" to open and confiscate Plaintiff's mail in January 2016, because they reasonably applied the policies and procedures set forth in DOCCS Directive #4422 and had a legitimate penological interest in preventing the mailing of contraband. *See* Dkt. No. 80-14 at 13–15. The Court finds that Magistrate Judge Lovric correctly determined that Defendants' motion for summary judgment as to these claims should be granted. *See* Dkt. No. 85 at 31.

The interception of a prisoner's mail has been analyzed under both the First and Fourth Amendments. *See United States v. Felipe*, 148 F.3d 101, 108 (2d Cir. 1998). The First Amendment protects a prisoner's right to the free flow of incoming and outgoing mail, with greater protection being afforded to outgoing mail. *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). The Fourth Amendment establishes that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures[ ] shall not be violated." U.S. Const. amend. IV. However, "a prisoner's constitutional rights are limited by the legitimate penological needs of the prison system." *Felipe*, 148 F.3d at 107. "The investigation and prevention of

ongoing illegal inmate activity constitute legitimate penological objectives." *United States v. Workman*, 80 F.3d 688, 699 (2d Cir. 1996). Non-legal, outgoing mail may be opened and read by prison officials with "good cause." *Minigan v. Irvin*, 977 F. Supp. 607, 609 (W.D.N.Y. 1997) (citations omitted). Courts in this Circuit have upheld Directive #4422 and DOCCS' policy and procedure for inspection of outgoing inmate correspondence as reasonably related to legitimate penological interest. *See id.*

Directive #4422 generally sets forth DOCCS' correspondence procedures, stating in relevant part that oversized correspondence "shall be inspected in the presence of the offender by a designated security staff person for the presence of contraband," and that after inspection, "[l]egitimate correspondence may be sealed by the offender ..., and the inspecting staff person shall then sign the back of the envelope or parcel certifying inspection[.]" Dkt. No. 80-6 at 82. Plaintiff contends that Defendants did not have good cause to open his mail because they failed to adhere to Directive #4422(III)(B)(9), which he argues requires written authorization from the Superintendent to open the mail, and that Defendant Purdy did not have written or verbal authorization to do so. *See* Dkt. No. 80-5 at 45–46, 50–51. Defendants disagree, claiming that written authorization is only required for outgoing mail in a standard business envelope. *See* Dkt. No. 80-14 at 14. On January 11, 2016, Defendant Purdy states that he was working in the mailroom when he was presented with an oversized, sealed envelope mailed by Plaintiff. *See* Dkt. No. 80-12 at ¶ 5. Defendant Jacobsen attests that she provided verbal authorization to confiscate and open the sealed, oversized, outgoing mail envelope, based on Plaintiff's failure to comply with Directive #4422. *See* Dkt. No. 80-6 at ¶ 14. Plaintiff also alleges that Defendants did not have reasonable cause to retain his outgoing mail because they failed to adhere to Directive #4422. *See* Dkt. No. 80-5 at 41.

Even assuming the Defendants violated these components of Directive #4422, these facts, without more, do not result in a constitutional violation. *See Long v. Crowley*, No. 09-CV-4456A, 2012 WL 1202181, *9 (W.D.N.Y. Mar. 22, 2012). To establish a First or Fourth Amendment violation, Plaintiff must prove that Defendants lacked "good" or "reasonable" cause to open, inspect, and confiscate his mail. *See id.* Based upon the totality of the evidence, the Court agrees with Magistrate Judge Lovric's determination that Defendants acted with good cause and in the interest of prison security when they opened and confiscated a sealed, over-sized envelope addressed to the family member of another inmate, containing legal materials, that was not produced for inspection prior to mailing or marked as "legal mail." *See* Dkt. No. 85 at 30; *see also Long*, 2012 WL 1202181, at *9. Defendants have articulated legitimate penological objectives for the prevention of unauthorized inmate communications, including protecting against the exchange of contraband, the January 2016 occurrence appears to have been an isolated incident, and Plaintiff has not come forth with evidence that the opening of his non-privileged mail resulted in any harm.[4] *See* Dkt. No. 85 at 31; *see also Minigan*, 977 F. Supp. at 610. Moreover, the record makes clear that Plaintiff even acknowledged that the contents of the envelope violated Directive #4422, and were thus contraband, because the envelope contained written material for a different inmate not identified as the sender. *See* Dkt. No. 80-2 at 293; Dkt. No. 80-6 at 83.

---

[4] While Plaintiff attempted to create an issue of fact by arguing Defendant Purdy acted without just cause because he did not return the correspondence with a particular facility form, this form is dated two years after the incident and, as Plaintiff concedes, does not pertain to the correspondence at issue. *See* Dkt. No. 80-3 at 50; Dkt. No. 80-5 at 47, 311; Dkt. No. 85 at 28–29. As such, the Court finds that the form does not create an issue of fact as to whether Defendants violated Plaintiff's Fourth Amendment rights .

Based upon the record before the Court, Defendants have met their burden of showing that their motion for summary judgment should be granted with regards to Plaintiff's Fourth Amendment and First Amendment freedom of speech claims.

## D.     First Amendment Retaliation

"Courts properly approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.'" *Davis*, 320 F.3d at 352 (quotation and other citation omitted). "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show . . . '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Espinal*, 558 F.3d at 128 (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).[5]

In determining whether a causal connection exists between a plaintiff's protected activity and a prison official's actions, factors to be considered include: "(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation." *Cole v. New York State Dep't of Corr. Servs.*, No. 9:10-CV-1098, 2012 WL 4491825, *11 (N.D.N.Y. Aug. 31, 2012) (citing *Colon*, 58 F.3d at 872–73).

---

[5] Defendants do not dispute that Plaintiff engaged in protected activity or that he suffered adverse actions. *See* Dkt. No. 80-14 at 16–28.

Upon satisfying his initial burden, "the burden shifts to defendants to establish that the same adverse action would have been taken even in the absence of the plaintiff's protected conduct, *i.e.*, 'even if they had not been improperly motivated.'" *Davidson v. Desai*, 817 F. Supp. 2d 166, 194 (W.D.N.Y. 2011) (quoting *Graham*, 89 F.3d at 80). "At the summary judgment stage, if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail." *Davidson v. Chestnut*, 193 F.3d 144, 149 (2d Cir. 1999); *see also Murray v. Hulihan*, 436 Fed. Appx. 22, 23 (2d Cir. 2011) ("Defendants cannot be liable for First Amendment retaliation if they would have taken the adverse action even in the absence of the protected conduct").

### 1. *Claims Related to January 2016 MBR, Disciplinary Hearing, and Appeal*

Plaintiff alleges that Defendant Purdy issued a January 2016 MBR and Defendants Huckeba and Niles rendered subsequent disciplinary determinations with retaliatory animus after reviewing the contents of Plaintiff's confiscated documents discussed earlier.[6] *See* Dkt. No. 80-5 at 204, 209–10, 326. Defendants argue that Plaintiff has not established a causal connection between the protected conduct and Defendants' actions and further, that Defendants would have taken the same action, absent the protected conduct. *See* Dkt. No. 80-14 at 20–22, 24–25. The Court agrees with Magistrate Judge Lovric's determination that Plaintiff's allegations are impermissibly vague, conclusory, and entirely unsupported by competent, admissible facts. *See* Dkt. No. 85 at 35. Mere speculation that a defendant acted with retaliatory animus, without more,

---

[6] On January 11, 2016, Defendant Purdy issued a MBR charging Plaintiff with violating rules related to following Directive # 4422 and legal assistance. *See* Dkt. No. 80-2 at 262. On January 20, 2016, Defendant Huckeba presided over a Tier II Disciplinary Hearing related to the MBR, subsequently finding Plaintiff guilty of both charges. *See id.* at 259, 260, 266, 287. On January 21, 2016, Defendant Niles affirmed Defendant Huckeba's determination. *See* Dkt. No. 80-2 at 291.

does not support a claim for retaliation. *See Dorsey v. Fisher*, 486 Fed. Appx. 25, 27 (2d Cir. 2012). Plaintiff has not provided evidence of any connection between Defendants and the individuals referenced in the confiscated documents. *See Flood v. Cappelli*, No. 18-CV-3897, 2019 WL 3778736, *8 (S.D.N.Y. Aug. 12, 2019).

As such, the record lacks evidence from which a rationale finder of fact could conclude that Plaintiff established the third element necessary for his retaliation claims to succeed. Therefore, the Court grants Defendants' motion for summary judgment as to Plaintiff's retaliation claim against Defendants Purdy, Huckeba, and Niles related to the January 2016 MBR and disciplinary hearing/appeal.

### 2. *Claims Related to Inmate Records*

Plaintiff alleges that Defendants Jacobsen and Niles denied his requests for a copy of Inmate Teddy Jeudy's ("Jeudy") records in retaliation for prior grievances, lawsuits, the contents of the envelope he attempted to mail in January 2016, and because Plaintiff sought Jeudy's records "for litigation purposes." *See* Dkt. No. 80-5 at 21, 77, 337–38. Defendants argue that Defendants Jacobsen and Niles would have denied Plaintiff's request, absent the protected conduct. *See* Dkt. No. 80-14 at 25. Plaintiff submitted requests for Jeudy's records that were denied on February 25, 2016, August 10, 2016, and August 23, 2016. *See* Dkt. No. 80-3 at 161, 163, 165. Defendants assert that they denied these requests for a variety of reasons: (1) inmates are not permitted to possess a different inmate's records, *see* Dkt. No. 80-6 at ¶ 31; (2) Plaintiff could have been disciplined for possessing Jeudy's records if a random cell search uncovered the documents, *see id.*; (3) the Superintendent had already denied this same request, and Plaintiff did not offer any new facts in his second attempt which would have justified disclosure of another inmate's disciplinary records, *see* Dkt. No. 80-11 at ¶ 15; and (4) Plaintiff could have had an attorney

request certain documents, but no request was made by an attorney. *See* Dkt. No. 80-6 at ¶¶ 27-32.

As such, the record lacks evidence undermining Defendants' legitimate, non-retaliatory reasons for denying Plaintiff's requests for Jeudy's records. *See Nieblas v. Ricci*, No. 03-CV-6225, 2008 WL 163686, *7 (W.D.N.Y. Jan. 16, 2008). Therefore, the Court grants Defendants' motion for summary judgment as to Plaintiff's retaliation claims against Defendants Jacobsen and Niles related to Jeudy's records.

### 3. Claims Related to Law Library Position

Plaintiff alleges that Defendants Wlodkowski and Niles discharged him from his position in the law library, in January 2016, in retaliation for filing grievances, lawsuits, and because of the contents of the envelope he attempted to mail in January 2016. *See* Dkt. No. 32 at 11; Dkt. No. 80-5 at 321–25; Dkt. No. 85 at 39. Defendants argue that they were not personally involved in the decision to remove Plaintiff from his position in the law library. *See* Dkt. No. 80-14 at 23–25. The Court agrees with Magistrate Judge Lovric that the record lacks evidence that these Defendants were even aware of Plaintiffs' lawsuits filed prior to January 2016, that Defendants were not referenced in the grievance Plaintiff filed prior to this discharge, and that there is no indication that these Defendants were identified in the documents in the January 2016 envelope. *See* Dkt. No. 85 at 39.

As such, the record lacks evidence from which a rationale finder of fact could conclude that Plaintiff established the third element necessary for his retaliation claims to succeed. Therefore, the Court grants Defendants' motion for summary judgment as to Plaintiff's retaliation claim against Defendants Wlodkowski and Niles related to Plaintiff's discharge from his law library position.

### *4. Claims Related to February 2017 MBR and Hearing*

Although the Court has found that Defendants' motion for summary judgment should be granted as to these claims based on Plaintiff's failure to exhaust his administrative remedies, the Court will nevertheless address the merits of Plaintiff's First Amendment retaliation claim. Plaintiff alleges that Defendant Wlodkowski acted with retaliatory animus when he issued the February 2017 MBR because Plaintiff previously filed a grievance against Wlodkowski in 2016. *See* Dkt. No. 80-5 at 213. Defendants argue that Plaintiff has not established a causal connection between the protected activity and Defendant Wlodkowski's actions, and that he would have taken the same actions despite the protected conduct. *See* Dkt. No. 80-14 at 23–24. Plaintiff also alleges that Defendant Purdy retaliated against him when he found him guilty after a disciplinary hearing because Plaintiff successfully appealed Defendant Purdy's disciplinary determination related to the January 2016 MBR. *See* No. 80-5 at 208. Defendants argue that Defendant Purdy would also have taken the same actions despite the protected conduct. *See* Dkt. No. 80-14 at 21, 23–24.

The Court agrees with Magistrate Judge Lovric's determination that, while Plaintiff claims that Defendant Wlodkowski waged a "campaign of harassment" against him, the record provides no evidence of any specific act from January 2016 until February 2017 that supports Plaintiff's claim. *See* Dkt. No. 80-5 at 125–28; Dkt. No. 85 at 41. Furthermore, it is clear from the record that Plaintiff admitted to the facts that created the basis for the February 2017 MBR, namely, providing unauthorized legal assistance and possessing contraband. *See* Dkt. No. 80-3 at 181, 184; Dkt. No. 80-4 at 5–13. Thus, Defendants have met their burden by demonstrating through admissible evidence that there is no dispute that Plaintiff committed the prohibited conduct charged in the misbehavior report, establishing that Defendants would have imposed the same

punishment, regardless of the protected conduct. *See Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002); *Waters v. Prack*, No. 9:13-CV-1437, 2012 WL 1239642, *8 (N.D.N.Y. Feb. 24, 2017). Therefore, the Court grants Defendants' motion for summary judgment as to Plaintiff's retaliation claims against Defendants Wlodkowski and Purdy as to the February 2017 MBR and hearing on the merits as well.

### 5. *Claims against Defendant Jacobsen*

#### a. The opening of Plaintiff's January 2016 mail

Plaintiff alleges that Defendant Jacobsen was motivated to retaliate against him when she directed Defendant Purdy to open his mail in January 2016 because she was aware of his prior civil rights complaints. *See* Dkt. No. 80-5 at 21–27. Defendants argue that Plaintiff failed to establish the causal connection between the protected speech and the adverse action, namely, that Defendant Jacobsen was unaware of the details surrounding Plaintiff's July 2015 lawsuits when she authorized the mail to be opened. *See* Dkt. No. 80-14 at 26. The Court agrees with Magistrate Judge Lovric's determination that while the six month gap between the filing of Plaintiff's 2015 lawsuits and the opening of his mail in 2016 suggests a causal connection, it is insufficient to defeat a motion for summary judgment. *See Williams v. King*, 763 Fed. Appx. 36, 38–39 (2d Cir. 2019). While Plaintiff alleges that Defendant Jacobsen was aware of the 2015 lawsuits, *see* Dkt. No. 80-5 at 22–27, the record lacks evidence establishing how or why Defendant Jacobsen would be motivated to retaliate against Plaintiff due to any prior lawsuit that did not involve her, or any other officers or staff at Wallkill C.F. *See id.* at 27. Therefore, the Court grants Defendants' motion for summary judgment as to Plaintiff's retaliation claim against Defendant Jacobsen related to the opening of Plaintiff's mail in January 2016.

#### b. Facility claim

Plaintiff alleges that Defendant Jacobsen retaliated against him when she denied his facility claim because of his prior lawsuits, grievances, and the contents of the envelope he attempted to mail in January 2016. *See* Dkt. No. 80-5 at 77. Plaintiff's facility claim was for compensation in the amount of $5,000.00 – the maximum amount allowed by DOCCS Directive #2733 – for the mail confiscated in January 2016. *See* Dkt. No. 80-6 at 93. Defendants argue that Defendant Jacobsen's decision to deny the facility claim was "for reasons unrelated to retaliation," but do not dispute the issues of fact. *See* Dkt. No. 80-14 at 27–28. The Court agrees with Magistrate Judge Lovric's determination that Defendant Jacobsen presented sufficient evidence establishing that she would have taken the same action against Plaintiff, in the absence of protected conduct, including that Plaintiff failed to provide evidence to support the value of his papers, and that Plaintiff was "substantially responsible for the loss or damage, specifically because it was caused by a violation of rules." Dkt. No. 80-6 at ¶ 23. Therefore, the Court grants Defendants' motion for summary judgment as to Plaintiff's retaliation claim against Defendant Jacobsen related to Plaintiff's facility claim.

### c. Rules 113.23 and 180.17

Plaintiff also alleges a First Amendment retaliation claim against Defendant Jacobsen based upon the application of DOCCS' Rules 113.23 and 180.17. *See* Dkt. No. 32 at 39. Magistrate Judge Lovric found that Defendants did not present any argument in support of summary judgment on this ground, and, therefore, declined to undertake *sua sponte* review of this claim. *See* Dkt. No. 80 at 43 n.1. While its generally prudent not to engage in *sua sponte* review, the Court declines to permit this claim, to the extent that it was even raised, to go forward.

Plaintiff's claim based on the application of DOCCS' Rules 113.23 and 180.17 relates to the February 2017 MBR. *See* Dkt. No. 80-13 at ¶¶ 115-31. Since Plaintiff failed to appeal the

disciplinary determination, it necessarily follows that Defendant Jacobsen was not personally involved in any alleged retaliatory application of Rules 113.23 and 180.17. As such, the claim is dismissed based on her lack of personal involvement. Alternatively, the Court dismisses this claim based on Plaintiff's failure to exhaust, as set forth above.

Accordingly, the Court rejects Magistrate Judge Lovric's Report-Recommendation and Order insofar as he declined to review and dismiss this claim.

## E.      Injunctive and Declaratory Relief

Defendants move for summary judgment on Plaintiff's claims for declaratory and injunctive relief against Defendant Annucci, in his official capacity, because the requests have been rendered moot by Plaintiff's release from DOCCS' custody. *See* Dkt. No. 80-14 at 28–31. Plaintiff's release from DOCCS' custody on July 19, 2018 moots his claim for prospective injunctive and declaratory relief. *See Ciaprazi v. Jacobson*, 719 Fed. Appx. 86, 87 (2d Cir. 2018); *Collins v. Goord*, No. 05-CV-39, 2009 WL 1796550, *3 (W.D.N.Y. June 24, 2009) (holding that the plaintiff's release from prison moots his interest in either an injunction or a declaration regarding his conditions of confinement). As such, the Court finds that Magistrate Judge Lovric correctly determined that Defendants' motion for summary judgment as to these claims should be granted. *See* Dkt. No. 85 at 47.

## F.      Special Conditions of Parole

Defendants move for summary judgment on the Fourteenth Amendment due process claims against Defendants Levandoski, Annucci, and Jacobsen, related to the recommendations for conditions of Plaintiff's parole, namely, the recommendation of a special condition in which Plaintiff, after his release, was to have no contact, no communication, and no association by any

means with his spouse and his daughter without prior authorization from his parole officer. *See* Dkt. No. 80-10 at ¶ 4.

### 1. *Defendant Levandoski*

Defendants argue that Defendant Levandoski's recommendations for this special condition were based upon legitimate state interests, and thus summary judgment of the Fourteenth Amendment claim is appropriate. *See* Dkt. No. 80-14 at 34.

"In the Second Circuit, special restrictions on a parolee's rights are upheld where they 'are reasonably and necessarily related to the interests that the Government retains after his conditional release.'" *Yunus v. Robinson*, No. 17-cv-5839, 2019 WL 168544, *20 (S.D.N.Y. Jan. 11, 2019) (quoting *Muhammad v. Evans*, No. 11 CV 2113, 2014 WL 4232496, *9 (S.D.N.Y. Aug. 15, 2014)). Conditions will be upheld if there "is a reasonable relationship to the parolee's prior conduct or to a legitimate government interest such as rehabilitation, the prevention of recidivism and future offenses, and protection of the public." *Id.* (citing *Singleton v. Doe*, 210 F. Supp. 3d 359, 372–74 (E.D.N.Y. 2016)). However, "if conditions are arbitrary and capricious, they will be invalidated." *Id.* Furthermore, "parole conditions that bar a parent from all contact with a child or condition such contact on a parole officer's approval implicate a fundamental liberty interest in a familial relationship, are subject to strict scrutiny, require individualized justification based on the threat posed by the defendant to the child, and require that the releasee be given an opportunity to be heard before their imposition." *Maldonado v. Mattingly*, No. 11-CV-1091, 2019 WL 5784940, *10 (W.D.N.Y. Nov. 6, 2019) (citing *Doe v. Lima*, 270 F. Supp. 3d 684, 703 (S.D.N.Y. 2017)).

Magistrate Judge Lovric determined that, after reviewing the record, material issues of fact existed as to whether the special conditions of parole are arbitrary and capricious. First, Magistrate Judge Lovric found that Defendants did not present evidence establishing that the

special conditions were related to Plaintiff's robbery conviction. *See* Dkt. No. 85 at 55.

Magistrate Judge Lovric also found that Defendants have not provided evidence that the special conditions were narrowly tailored to protect Plaintiff's daughter or his wife, because the record was devoid of any documentary evidence relating to the 1996 domestic assault charge, there was no allegation that this charge involved Plaintiff's daughter or his wife, and no Order of Protection was currently active or any other court order prohibiting or limiting Plaintiff's contact with them. *See* Dkt. No. 80-4 at 59, 71; Dkt. No. 32 at 200. Magistrate Judge Lovric also highlighted that Defendants did not submit evidence contradicting Plaintiff's testimony that he has maintained "frequent contact, communication, and association" with his family, that they appeared on his correspondence and telephone lists, that he provided them with financial support through his facility account, and that he completed a parenting program and was assigned as a clerk to the parenting program in 2016. *See* Dkt. No. 32 at 28, 32, 33.

Defendants object to Magistrate Judge Lovric's determination, arguing that Plaintiff has challenged these conditions in subsequent grievances and a lawsuit against the Parole Board, rendering his claim superfluous, and that the conditions were reasonably related to Plaintiff's criminal history. *See* Dkt. No. 88 at 12. The cases that Defendants cite in objection to Magistrate Judge Lovric's Report-Recommendation and Order are distinguishable from the matter before the Court. For example, the court in *Muhammad v. Evans* did uphold parole conditions that restricted a parolee from residing with intimate partners and restricted his right to marry; however, the plaintiff in that case had multiple protective orders against women (including his former wife) that were in effect at the time the special conditions were determined, and he was convicted for charges of domestic violence against his ex-fiancée, as well charges of assault, stalking, and harassment of the same woman. *See Muhammad v. Evans*, No. 11 CV 2113, 2014 WL 4232496,

*9 (S.D.N.Y. Aug. 15, 2014).  The court in *Walker v. Mattingly* upheld parole conditions that restricted the housing of a parolee who was designated as a Level 3 sex offender.  *See Walker v. Mattingly*, No. 09-CV-845, 2012 WL 1160772, *2 (W.D.N.Y. Apr. 5, 2012).  These cases are factually different from the present case, where Plaintiff has one domestic assault charge from twenty-two years prior to the date of his release in July 2018, and one Order of Protection issued thirteen years prior to the date of his release (which did restrict Plaintiff from the residence, property, school, or place of employment of Plaintiff's wife and daughter for three months).  *See* Dkt. No. 80-10 at ¶¶ 5, 8.[7]

Defendants' argument regarding Defendant Levandoski's role in recommending the condition, and that this would potentially diminish her responsibility, is also not persuasive.  *See* Dkt. No. 88 at 9.  Officers who make recommendations as to the status of a parolee or their conditions of parole are frequently made defendants in proceedings and are not free from liability because the ultimate decision to impose the special condition is made elsewhere.  *See, e.g.*, *Maldonado*, 2019 WL 5784940, at *11.  Furthermore, while Defendants argue that this matter is superfluous because of a pending Eastern District of New York case against the ultimate decisionmakers, no final determination has been made in that case, and Defendant Levandoski is not a defendant in that case.  *See* Dkt. No. 88 at 11; Dkt. No. 88-2.  Furthermore, this case is first filed and more advanced.  *See Waters v. Annucci*, No. 18-Civ-5452 (E.D.N.Y.).  Notably, in the Eastern District of New York case, Defendants intend to file a motion to dismiss or stay that proceeding because of the Northern District of New York case.  *See id.*, Dkt. No. 32 at 1–2.

---

[7] The Court does agree with Defendants that it is plausible that Plaintiff was not prohibited from contact with his second child because this child was not born until October 2005, after the expiration of the March 2005 Order of Protection, and, therefore, he was not possibly included in the Order of Protection.  *See* Dkt. No. 88 at 13.

If the goal of the condition was to protect Plaintiff's wife and daughter, a question of material fact exists as to whether such a danger has been demonstrated, as well as to whether the condition represents a greater deprivation than is reasonably necessary. *See United States v. Myers*, 426 F.3d 117, 128 (2d Cir. 2005). Therefore, the Court denies Defendants' motion for summary judgment as to Plaintiff's due process claim against Defendant Levandoski related to the special conditions of Plaintiff's parole.

### 2. *Defendants Annucci and Jacobsen*

Defendants argue that Defendants Annucci and Jacobsen were not personally involved in the recommended conditions of parole. *See* Dkt. No. 80-14 at 34. "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 21 F.3d 496, 501 (2d Cir. 1991)). The mere position of a prison official "within the prison hierarchy is insufficient to establish the official's personal involvement in the alleged constitutional deprivation." *Bloodywone v. Bellnier*, 778 Fed. Appx. 52, 53 (2d Cir. 2019) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

As Magistrate Judge Lovric correctly determined, Plaintiff's conclusory claims that Defendant Annucci was personally involved in decisions related to conditions of parole are insufficient to establish personal involvement. Plaintiff needed to provide sufficient evidence to establish that Defendant Annucci created, or allowed to continue, a policy or custom under which the alleged constitutional violation occurred. *See Colon*, 58 F.3d at 873. There is no evidence in the record that would permit a jury to find that Defendant Annucci did so, as there is no evidence suggesting that he was even aware of Plaintiff's claims or that he acted, or failed to act, once placed on notice of these claims. *See Haynes v. Mattingly*, No. 06-CV-1383, 2014 WL 4792241,

at *9 (S.D.N.Y. Sept. 24, 2014).  As such, the Court finds that Magistrate Judge Lovric correctly determined that Defendants' motion for summary judgment as to Plaintiff's Fourteenth Amendment due process claim against Defendant Annucci should be granted.  *See* Dkt. No. 85 at 51.

Magistrate Judge Lovric also determined that the claim against Defendant Jacobsen should survive because genuine issues of material fact exist regarding her personal involvement in the Fourteenth Amendment claims.  Defendants object to Magistrate Judge Lovric's determination, arguing that she had no involvement in Plaintiff's parole recommendation, nor any input into the decision made by the Parole Board, and therefore lacked the personal involvement factor required to succeed on this claim.  *See* Dkt. No. 88 at 14; Dkt. No. 80-6 at ¶ 40.

A supervisory official is deemed to have been personally involved in an alleged constitutional deprivation when "if, after learning of a violation through a report or appeal, [ ] she failed to remedy the wrong. . . ."  *Vega v. Artus*, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009). District courts in this Circuit have extended this concept to the denial of a grievance, where the alleged constitutional violation complained of was "ongoing . . . such that the 'supervisory official who reviews the grievance can remedy [it] directly.'"  *Burton v. Lynch*, 664 F. Supp. 2d 349, 360 (S.D.N.Y. 2009) (citing *Vega*, 610 F. Supp. 2d at 198); *see also Harnett v. Barr*, 538 F. Supp. 2d 511, 524–25 (N.D.N.Y. 2008) ("Some courts have held that if the supervisory official acts personally in denying a grievance at various stages of the grievance process, he may be sufficiently involved in failing to remedy this situation").  "If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation."  *Id.*  District courts in this Circuit have also found personal involvement when a superintendent "provides a detailed and specific response

to the grievance rather than a pro forma denial." *Johnson v. Fischer*, No. 9:12-CV-210, 2015 WL 670429, *8 (N.D.N.Y. Feb. 17, 2015) (citing *Burton*, 664 F. Supp. 2d at 360).

Plaintiff was incarcerated at Wallkill C.F. when Defendant Jacobson denied two grievances related to Plaintiff's special conditions of parole. *See* Dkt. No. 80-5 at 18; Dkt. No. 80-10 at ¶ 7. The first grievance was denied by Defendant Jacobsen on May 7, 2018. *See* Dkt. No. 80-4 at 76. The second grievance was denied by Defendant Jacobsen on May 28, 2018. *See* Dkt. No. 80-4 at 55. Both denials issued by Defendant Jacobsen were more than simply pro forma denials. Moreover, Plaintiff's grievances involved alleged ongoing constitutional violations. Therefore, Plaintiff has presented a triable issue of fact that Defendant Jacobsen was personally involved in the alleged constitutional violations. As such, the Court finds that Magistrate Judge Lovric correctly determined that Defendants' motion for summary judgment as to Plaintiff's Fourteenth Amendment due process claim against Defendant Jacobson should be denied. *See* Dkt. No. 80 at 53.

## G.     Qualified Immunity[8]

Defendants also move for summary judgment on all claims based on the doctrine of qualified immunity. Magistrate Judge Lovric considered these arguments only as to whether Defendants Jacobsen and Levandoski are shielded from liability based on the doctrine of qualified immunity. *See* Dkt. No. 85 at 56–59. Magistrate Judge Lovric determined that Defendants Jacobsen and Levandoski are not shielded by qualified immunity because the special conditions of

---

[8] To the extent that Defendants move for summary judgment for all claims based on the doctrine of qualified immunity, the Court will only consider these arguments for claims that survived the above analysis. *See Posr v. City of New York*, No. 10 CIV 2551, 2013 WL 2419142, *10 n.8 (S.D.N.Y. June 4, 2013) ("Because [the defendant] did not violate [the] [p]laintiff's [constitutional] rights, there is no need to consider if [the defendant] is entitled to qualified immunity"), *aff'd sub nom. Posr v. Ueberbacher*, 569 Fed. Appx. 32 (2d Cir. 2014).

Plaintiff's parole do not appear to be justified or tailored to Plaintiff's circumstances. *See* Dkt. No. 85 at 58. Defendants object to Magistrate Judge Lovric's Report-Recommendation and Order, arguing that Defendants' conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See* Dkt. No. 88 at 16. Defendants also object insofar as they allege that Plaintiff's claims do not support an inference that it would not have been objectively reasonable for officials in Defendants' positions to believe their conduct did not violate Plaintiff's federal rights. *See id.*

"The doctrine of qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

> For a constitutional right to be "clearly established" for purposes of determining whether an officer is entitled to qualified immunity, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that *in the light of pre-existing law the unlawfulness must be apparent*."

*Mollica v. Volker*, 229 F.3d 366, 370–71 (2d Cir. 2000) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (emphasis in original). "Where the right at issue in the circumstances confronting [officials] ... was clearly established but was violated, the officers will nonetheless be entitled to qualified immunity 'if ... it was objectively reasonable for them to believe their acts did not violate those rights.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quotation and other citation omitted).

"Although a mere mistake in the performance of an official duty may not deprive the officer of qualified immunity, the doctrine does not shield performance that either (a) was in violation of clearly established law, or (b) was plainly incompetent." *Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010) (citations omitted). "With respect to both the legal question and the matter of competence, the officials' actions must be evaluated for objective reasonableness.... That is, '[e]ven if the right at issue was clearly established in certain respects ... an officer is still entitled to qualified immunity if "officers of reasonable competence could disagree" on the legality of the action at issue in its particular factual context.'" *Id.* (quotations omitted).

The determination of whether an official's conduct was objectively reasonable is a mixed question of law and fact. *See Zellner*, 494 F.3d at 367 (citing *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)) (other citations omitted). "The ultimate question of whether it was objectively reasonable for the officer to believe that his conduct did not violate a clearly established right, *i.e.*, whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court." *Id.* (citation omitted). "However, '[a] contention that ... it was objectively reasonable for the official to believe that his acts did not violate those rights has "its principle focus on the particular facts of the case."'" *Id.* (quotation and other citations omitted).

If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. *See id.* at 368 (citation omitted). Any unresolved factual issues, however, must be resolved by the jury. *See id.* (quoting *Kerman*, 374 F.3d at 109) (other citations omitted). Once the court has received the jury's decision as to "what the facts were that the officer faced or perceived," the court must then "make

the ultimate legal determination of whether qualified immunity attaches on those facts."
*Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (quotation omitted); *see also Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (quotation omitted).

The Court agrees with Magistrate Judge Lovric's determination that Defendants Jacobsen and Levandoski are not entitled to qualified immunity as to Plaintiff's Fourteenth Amendment due process claim regarding the recommended conditions of parole.  As discussed previously, other cases in this Circuit have held that restrictions on a parent's "fundamental liberty interest in maintaining a relationship with his [ ] child . . . [who] has a reciprocal interest . . . are subject to strict scrutiny and as such must be narrowly tailored to serve a compelling state interest[,] and that these standards apply to parole conditions akin to those here."  *Lima*, 270 F. Supp. 3d at 711 (citing *Doe v. Annucci*, No. 14 Civ. 2953, 2015 WL 4393012, *11–15 (S.D.N.Y. July 15, 2015)). "This was not a case in which there was 'an objectively reasonable basis for the[] decision, *whichever way they make it*.'" *Id.* (quoting *Doe ex rel. Doe v. Whelan*, 732 F.3d 151, 155 (2d Cir. 2013) (emphasis in original)).

Based on the record before the Court, there are genuine issues of material fact as to whether the behavior of these Defendants fell outside the protection that qualified immunity extends to good-faith judgment calls.  *See id.*  As such, the Court finds that Magistrate Judge Lovric correctly determined that Defendants' motion for summary judgment as to qualified immunity should be denied as to Plaintiff's Fourteenth Amendment due process claim regarding his conditions of parole.  *See* Dkt. No. 85 at 58.

## IV. CONCLUSION

After carefully considering Magistrate Judge Lovric's Report-Recommendation and Order, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Lovric's February 13, 2020 Report-Recommendation and Order is **ADOPTED in part and REJECTED in part**;[9] and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 80) is **GRANTED in part and DENIED in part**;[10] and the Court further

**ORDERS** the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 31, 2020
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[9] The Report-Recommendation and Order is only rejected insofar as it recommended not dismissing Plaintiff's First Amendment retaliation claim against Defendant Jacobsen relating to the application of DOCCS' Rules 113.23 and 180.17.

[10] As a result of this Memorandum-Decision and Order, the only remaining claim is Plaintiff's Fourteenth Amendment due process claim against Defendants Jacobsen and Levandoski as to Plaintiff's recommended conditions of parole.